Slip Op. 09-40

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____
: 
SALMON SPAWNING              :
RECOVERY ALLIANCE, *et al.*,     :
                                 :
       Plaintiffs,          :
                                 :      **Before: Judith M. Barzilay, Judge**
       v.                  :      **Court No. 06-00191**
                                 :
UNITED STATES              :
                                 :
       Defendant.        :
_____:

## OPINION AND ORDER

[Plaintiffs' Motion to Transfer is granted.]

Dated: May 13, 2009

Marten Law Group PLLC (*Svend Brandt-Erichsen*) for the Plaintiffs.

*Michael F. Hertz*, Deputy Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Stephen C. Tosini*), for the Defendant.

     **BARZILAY, JUDGE:** The action filed by Plaintiffs Salmon Spawning & Recovery

Alliance, Native Fish Society, and Clark-Skamania Flyfishers (collectively, the "Plaintiffs")

against Defendant United States appears anew before the court on remand from the Federal

Circuit. Specifically, the mandate directs the court to determine whether (1) a claim made

pursuant only to Section 7(a)(2) of the Endangered Species Act ("ESA") falls within the

exclusive jurisdiction of the U.S. Court of International Trade ("CIT") under 28 U.S.C.

§§ 1581(i)(3) or 1581(i)(4); and (2) the CIT's broad residual jurisdiction encompassed in

§ 1581(i) conflicts with Section 11 of the ESA.  Plaintiffs accompanied their brief on these issues

with a Motion to Transfer the case to the U.S. District Court for the Western District of

Washington, the venue where this action initially arose.[1]  For the reasons stated herein, the court

finds that (1) a Section 7(a)(2) claim, on its own, fails to invoke this Court's subject matter

jurisdiction under § 1581(i) and that (2) the citizen-suit provision of the ESA, Section 11, and

§ 1581(i) are not in conflict.  Accordingly, Plaintiffs' Motion to Transfer is granted.

## I.  Background

### A.  The Endangered Species Act

Congress passed the ESA "to halt and reverse the trend toward species extinction . . . ."

*Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 (1978).  The central theme of the

legislation is "the overriding need *to devote whatever effort and resources were necessary* to

avoid further diminution of national and worldwide wildlife resources."  *Tennessee Valley

Authority*, 437 U.S. at 177 (quotations & citation omitted).  The ESA makes clear that Congress

has bestowed upon all Federal departments and agencies the duty of "conserv[ing] endangered

species and threatened species" and requires that they use "their authorities in furtherance of" this

purpose.[2]  16 U.S.C. § 1531(c)(1).

---

[1] Defendant consents to Plaintiffs' request that the case should be transferred.  Def. Reply 1 n.1.

[2] To "conserve" means "to use and the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary."  16 U.S.C. § 1532(3).

Section 4 of the ESA states that the Secretary of Commerce, or of the Interior, whichever is appropriate, is responsible for determining and listing which species are "threatened" or "endangered."[3]  16 U.S.C. §§ 1532(15), 1533(a).  The Secretary must also determine the "critical habitat" of each listed species and "issue such regulations as he deems necessary and advisable to provide for the conservation of such species."  § 1533(a)(3)(A)-(B)(i), (d).

Section 7(a)(2) requires that every federal agency, "in consultation with and with the assistance of the Secretary," must "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary" to be critical.  § 1536(a)(2).  In effect, Section 7(a)(2) describes the interagency consultation requirements under the ESA, containing both substantive and procedural elements that "compel[] agencies not only to *consider* the effect of their projects on endangered species, but [also] to take such actions as are necessary to *insure* that species are not extirpated as the result of federal activities."  *Tennessee Valley Authority*, 437 U.S. at 188 n.34.

Section 11(g)(1)(A), which forms part of the citizen-suit provision of the ESA, expressly grants any person the right to bring a civil action "to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of [the ESA] or regulation issued under the authority thereof . . . ."  16 U.S.C.

---

[3] The Secretary of the Interior administers the ESA through the U.S. Fish and Wildlife Service, while the Secretary of Commerce does so via the National Marine Fisheries Service. *See Salmon Spawning & Recovery Alliance v. Basham*, 31 CIT ___, ___ n.4, 477 F. Supp. 2d 1301, 1304 n.4 (2007) ("*Salmon II*").

§ 1540(g)(1)(A). However, the Supreme Court has explained that, in the absence of final agency

action, this provision does not provide independent jurisdiction to challenge an agency's

implementation or enforcement of the ESA. *Bennett v. Spear*, 520 U.S. 154, 172-74 (1997).

Section 11(g)(1) also grants the district courts with jurisdiction to enforce any provision of, or

regulation issued under, the ESA. § 1540(g)(1).

## B. Threatened and Endangered Salmon

Twenty-six populations of West Coast salmon and steelhead are listed by the National

Marine Fisheries Service as threatened or endangered under the ESA.[4] 50 C.F.R. §§ 223.102,

224.101 (listing threatened and endangered salmon species, respectively). Protection is also

afforded to certain hatchery-raised salmon. § 223.203(a). Customs has authored certain

regulations that prohibit the importation of protected salmon. 19 C.F.R. § 12.26(g)(1). Despite

these vigilant efforts, however, when some of the threatened or endangered salmon species swim

north from the United States into Canadian waters, many are killed before they can return to U.S.

rivers to spawn. Some of these dead salmon are ultimately imported into the United States by

commercial shippers and American sport fishermen, arguably in violation of Section 9 of the

ESA.[5]

---

[4] This case concerns three distinct types of the same species of salmon: Puget Sound Chinook, Lower Columbia River Chinook, and Snake River fall-run Chinook.

[5] Section 9(a)(1)(A) makes it unlawful for any person subject to the jurisdiction of the United States to import any endangered species into, or to export any such species from, the United States. 16 U.S.C. § 1538(a)(1)(A). The ESA also prohibits commercial use of threatened and endangered species. § 1538(a)(1)(E)–(F).

**C.  Procedural History**

In November 2005, Plaintiffs filed this action in the U.S. District Court for the Western

District of Washington under both Section 11 of the ESA and the Administrative Procedure Act

("APA").  Plaintiffs alleged that Defendant violated (1) Section 9 of the ESA when they

permitted endangered salmon and steelhead to be imported into the U.S. and (2) Section 7(a)(2)

of the ESA, as well as Sections 702 and 706 of the APA, after they failed to complete the

consultations that are required by § 1536(a)(2).  *See* Compl. ¶¶ 45, 51.  Defendant moved the

district court to dismiss the complaint for lack of subject matter jurisdiction, but that court

decided instead to transfer the action to the CIT.  *Salmon Spawning & Recovery Alliance v.*

*Spero*, No. C05-1878Z, 2006 WL 1207909, at *10 (W.D. Wash. May 3, 2006) ("*Salmon I*").

In March 2007, the court dismissed Plaintiffs' claims for lack of subject matter

jurisdiction.  *Salmon II*, 31 CIT at ___, 477 F. Supp. 2d at 1303.  First, noting that the power to

enforce or implement the ESA "lie[s] solely within the agency's discretion," the court found that

it could not hear Plaintiffs' Section 9 claim because federal courts do not have jurisdiction over

the matter.  *Id.*, 31 CIT at ___, 477 F. Supp. 2d at 1308.  Additionally, the court determined that

Plaintiffs lacked standing to bring the Section 7(a)(2) claim because a favorable decision was

unlikely and, therefore, Plaintiffs injury would not be redressed.  *Id*., 31 CIT at ___, 477 F. Supp.

2d at 1310.  An appeal to the Federal Circuit followed.

The Federal Circuit affirmed the court's dismissal of Plaintiffs' Section 9 claim,

specifically noting that an agency's decision to implement or enforce certain provisions of the

ESA are not reviewable under either the APA or Section 11 of the ESA.  *Salmon Spawning &*

*Recovery Alliance v. U.S. Customs & Border Prot.*, 550 F.3d 1121, 1128-30 (Fed. Cir. 2008)

(quotations & citations omitted) ("*Salmon III*").  However, the Plaintiffs were found to have

standing to bring the Section 7(a)(2) claim and the court's decision on that issue was reversed.

After it was explained that the court erred in its reading of the redressability prong of the

standing analysis, the Federal Circuit determined that Plaintiffs have standing given that "[a]

favorable decision in the current case would be a holding that defendants do have an obligation

to consult under section 7 regarding their failure to enforce the endangered salmon import ban."

*Salmon III*, 550 F.3d at 1131.  The case was remanded to this court to decide two issues of first

impression: (1) whether a claim made pursuant to Section 7(a)(2) alone falls within the exclusive

subject matter jurisdiction of the CIT under §§ 1581(i)(3) or (i)(4); and (2) whether Section 11 is

in conflict with § 1581(i).  *Id*. at 1133-35.

## II.  Standard for Transfer

The transfer of a civil action from the Court for lack of subject matter jurisdiction is

permitted where it is in the "interest of justice" and if such transfer is to a court in which the

action could have been brought at the time it was filed.  28 U.S.C. § 1631.  It is in the interest of

justice to transfer an action if it preserves a party's right to be heard on its potentially meritorious

claim.  *See Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987).

Moreover, pursuant to the Federal Circuit's instructions in *Salmon III*, this court must transfer the

action to the U.S. District Court for the Western District of Washington if it finds that it lacks

subject matter jurisdiction over Plaintiffs' Section 7(a)(2) claim.  *See* 550 F.3d at 1135.

## III.  Discussion

A fundamental question in any action before the Court is whether subject matter exists

over the claims presented.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95

(1998) (citation omitted).  "Without jurisdiction the court cannot proceed at all in any cause.

Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining

to the court is that of announcing the fact and dismissing the cause."  *Ex parte McCardle*, 74 U.S.

506, 514 (1868).  In § 1581(i), Congress provided the CIT with broad residual jurisdiction over

civil actions that arise out of import transactions.  *See Conoco, Inc. v. United States Foreign-

Trade Zones Bd.*, 18 F.3d 1581, 1588 (Fed. Cir. 1994).  Additionally, by passing the *Customs

Courts Act of 1980*, Pub. L. No. 96-417, 94 Stat. 1727, Congress provided the Court with

jurisdiction under § 1581(i) to avoid conflicts in jurisdiction with the district courts, to ensure

judicial review for various unspecified challenges to enforcement of import laws, and to ensure

uniformity in the judicial decision making process.  *See K Mart Corp. v. Cartier, Inc.*, 485 U.S.

176, 188 (1988).  However, that jurisdictional grant is not absolute, and "Congress did not

commit to the [CIT's] exclusive jurisdiction *every* suit against the Government challenging

customs-related laws and regulations."  *K Mart Corp.*, 485 U.S. at 188.

**A.  Subject Matter Jurisdiction: Section 7(a)(2) of the ESA and 28 U.S.C. § 1581(i)(3)-(4)**

The court must first decide whether a Section 7(a)(2) claim falls within the Court's

exclusive subject matter jurisdiction under either § 1581(i)(3) or § 1581(i)(4).  The Court has

exclusive jurisdiction over a "civil action commenced against the United States, its agencies, or

its officers, that arises out of any law of the United States providing for . . . embargoes or other

quantitative restrictions on the importation of merchandise for reasons other than the protection

of the public health or safety . . . ."  § 1581(i)(3).  Importantly, the Court  will not have

jurisdiction under § 1581(i)(3) in the absence of a law providing for an embargo.  *See Friedman

v. Kantor*, 21 CIT 901, 904, 977 F. Supp. 1242, 1246 (1997).  "[M]erely because the action

involves issues of international trade" does not mean that jurisdiction is available under

§ 1581(i)(3). *Friedman*, 21 CIT at 904, 977 F. Supp. at 1246.

An embargo or other quantitative restrictions falling under § 1581(i)(3) is defined as "a

governmentally imposed quantitative restriction – of zero – on the importation of merchandise."

*K Mart Corp.*, 485 U.S. at 185.  That restriction must be more than a mere "condition[] of

importation."  *Id*. at 189.  Additionally, "[a]n importation prohibition is not an embargo if rather

than reflecting a *governmental* restriction on the quantity of a particular product that will enter, it

merely provides a mechanism by which a private party might . . . enlist the Government's aid in

restricting the quantity of imports in order to enforce a private right."  *Id*. at 185.

Section 7(a)(2) does not itself provide for an embargo or other quantitative restriction

falling within the purview of § 1581(i)(3).[6]  Section 7(a)(2) merely states that the obligation of

every federal agency, "in consultation with and with the assistance of the Secretary," is to "insure

that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize

the continued existence of any endangered species or threatened species or result in the

destruction or adverse modification of habitat of such species which is determined by the

Secretary" to be critical.  § 1536(a)(2).  Absent from the text of Section 7(a)(2) are any terms that

serve as a limitation on the importation of certain merchandise, such as a "restriction," a

"prohibition," a "ban," a "bar," or an "embargo."  *Id*.  Equally telling is the absence of words

relating to "imports" and "transactions."  *Id*.  Instead, the statute spells out the requirements for

---

[6] Plaintiffs and Defendant agree with the court in their briefs that a Section 7(a)(2) claim alone does not invoke the Court's jurisdiction under either § 1581(i)(3) or § 1581(i)(4).  Pl. Br. 9-12; Def. Br. 1-4.  However, this agreement is not dispositive of the jurisdictional issue as it is always for the court to determine the parameters of its jurisdiction.  *Avecia, Inc. v. United States*, 30 CIT 1956, 1971, 469 F. Supp. 2d 1269, 1283 (2006) (citation omitted).

interagency consultations under the ESA, with an opinion issued by a federal agency being the

end result.  § 1536(a)(2), (b)-(c).  Those opinions utilize the expertise of the particular federal

agency to determine whether, based on the best scientific and commercial data available, specific

actions would harm either listed threatened or endangered species or their habitat.  § 1536(b)-(c).

That process contrasts starkly with the more extreme result, and altogether different purpose, of

an embargo – an absolute limit on "the entry of, or foreign trafficking in, any particular product

. . . ."  *K Mart Corp.*, 485 U.S. at 186.

       Section 7(a)(2) is also different from embargoes that are or have been imposed by the

federal government.  Typically, the federal government imposes quantitative restrictions as a

safeguard of public health, safety, or morality, or to further interests relating to foreign affairs,

law enforcement, or ecology.  *See id.* at 184 (citing 21 U.S.C. § 381; 15 U.S.C. § 1397; 19

U.S.C. § 1305; 22 U.S.C. § 2370(a); 15 U.S.C. §§ 1241-1244; 19 C.F.R. § 12.60); *Earth Island

Inst. v. Brown*, 28 F.3d 76, 78 (9th Cir. 1994) (finding that a ban on the importation of

commercial fish or fish products to protect ocean mammals is an embargo); *Earth Island Inst. v.

Christopher*, 6 F.3d 648, 651-52 (9th Cir. 1993) (finding that a ban on the importation of shrimp

or shrimp products to protect sea turtles constitutes an embargo).  In contrast, Section 7(a)(2),

plainly sets forth the necessary communications that must take place between various executive

agencies.  § 1536(a)(2).  "[These] consultation requirements of [S]ection 7 are designed to make

certain that every federal agency takes whatever actions are necessary to ensure the survival of

each endangered and threatened species."  *Salmon III*, 550 F.3d at 1132 (quotations & citations

omitted).  At most, Section 7(a)(2), in certain settings, may involve issues of international trade.

In those circumstances, the interagency consultations are one step removed from any final agency

action imposing a condition of importation.  That a law in limited circumstances touches upon

international trade law issues and concerns conditions of importation is insufficient to invoke the

Court's jurisdiction.  *See Friedman*, 21 CIT at 904, 977 F. Supp. at 1246; *K Mart Corp.*, 485

U.S. at 189.  Thus, the Court cannot have exclusive jurisdiction over a lone Section 7(a)(2) claim

under § 1581(i)(3).

Finally, § 1581(i)(4) does not provide the Court with the jurisdiction to hear a stand-alone

Section 7(a)(2) claim.  That provision applies where the law pursuant to which a claim is brought

involves the administration and enforcement of, among other determinations, an embargo or

other quantitative restriction.  § 1581(i)(4).  The plain language of Section 7(a)(2) does not

explicitly state, or otherwise imply, that the purpose of the provision is to administer or enforce

an embargo.  § 1536(a)(2).  That is, the particular federal agency cannot be said to be engaging in

the administration or enforcement of an embargo in Section 7(a)(2) when it authors an opinion

on listed species and their habitats to fulfill its consultation obligations under the ESA.

Moreover, where a law fails to invoke the Court's jurisdiction under § 1581(i)(3) because it is

not an embargo or other quantitative restriction, just as Section 7(a)(2) fails to do here, no

jurisdiction remains for the Court under § 1581(i)(4).  *See Native Fed'n of the Madre de Dios

River and Tributaries v. Bozovich Timber Prods., Inc.*, 31 CIT ___, ___, 491 F. Supp. 2d 1174,

1186 (2007).  Thus, a Section 7(a)(2) claim, on its own, cannot fall within the ambit of the

Court's exclusive subject matter jurisdiction under § 1581(i)(4).[7]

_____

[7] The outcome might be different here if a valid Section 9(a) claim were joined with the
case since that provision is an embargo or other quantitative restriction under § 1581(i)(3).
Section 9(a) of the ESA is a governmentally imposed ban on the importation of certain named
species that are determined to be "endangered."  § 1538(a)(1)(A); *K Mart Corp.*, 485 U.S. at 185.
However, the Federal Circuit affirmed this court's dismissal of Plaintiffs' Section 9(a) claim in

**B.  Conflict of Jurisdiction: Section 11 of the ESA and 28 U.S.C. § 1581(i)**

The remaining issue for the court to decide is whether there is a conflict between Section 11 and § 1581(i).  The citizen-suit provision of the ESA permits "any person" to bring a civil action to enjoin "the United States and any other governmental instrumentality or agency" who is alleged to violate a provision of the ESA.  § 1540(g)(1)(A).  Section 11 confers jurisdiction to "[t]he several district courts of the United States" to entertain any such action.  § 1540(c).  As is mentioned above, the Court has exclusive jurisdiction over civil actions commenced against "the United States, its agencies, or its officers" that concern import transactions and that do more than merely touch upon issues of international trade.  § 1581(i).

The seeming conflict between the Section 11 and § 1581(i) is nothing more than a paper tiger, and the concinnity is apparent when the two are read together.[8]  The ESA allows for courts other than the district courts to entertain claims made pursuant to the ESA.  Section 11 states that courts enumerated in 28 U.S.C. § 460 shall also have jurisdiction over any actions arising under the ESA.  § 1540(c).  Section 460 of Title 28 of the United States Code notes that judicial authority extends to "each court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States, and to the judges thereof."  28 U.S.C. § 460(a).  The CIT is such a court, possessing "all the powers in law and equity of . . . a district court of the United States."  28 U.S.C. § 1585.  Thus, the CIT, as a court vested with the power

_Salmon III_, and a determination on that issue here is beyond the scope of the mandate.  _See_ 550 F.3d at 1128-30.

[8] Plaintiffs and Defendant are in agreement with the court that there is no conflict between Section 11 and § 1581(i).  Pl. Br. 12-13; Def. Br. 4-6.

of a district court, fits within the definition of courts enumerated by Section 460 as holding

jurisdiction over claims made pursuant to the ESA.

Moreover, no conflict arises here because § 1581(i) is the more specific and later enacted

statute, and as such takes priority over the general grant of jurisdiction to the distriction courts in

Section 11.  Two important tools of statutory construction are that "the specific governs the

general," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (citation omitted), and

that Congress is presumed to legislate with knowledge of then existing law.  *See Morissette v.*

*United States*, 342 U.S. 246, 263 (1952); *see also Gozlon-Peretz v. United States*, 498 U.S. 395,

406-08 (1991).  Seven years after Congress enacted the ESA, it created the CIT, and in so doing

divested the other federal district courts of jurisdiction to entertain "any civil action commenced

against the United States, its agencies, or its officers, that arises out of any law of the United

States providing for . . . embargoes or other quantitative restrictions on the importation of

merchandise for reasons other than the protection of the public health or safety . . . ."  § 1581(i),

(i)(3).  Congress is presumed to have been aware of environmentally-related embargoes when it

enacted § 1581(i)(3).  To be sure, it could have carved out an exception preventing such cases

from being filed with the CIT, just as it excluded claims concerning "the public health or safety"

and immoral articles from the Court's jurisdiction under § 1581(i)(3) and § 1581(j), respectively.

Congress, however, did not, and its failure to do so indicates that the Court may hear claims

made pursuant to the ESA.

Because Plaintiffs' cause of action does not arise out of any law providing for an

embargo, as explained in Part A above, and for the reasons mentioned here in Part B, there is no

conflict between this Court's exclusive jurisdictional charter under Section 1581(i), and the

obligation imposed by Section 11 for all federal courts to entertain challenges under the ESA.

### IV.  Conclusion

While there is no doubt that all parties involved wish for the survival of the Puget Sound,

Lower Columbia River, and Snake River fall-run Chinook Salmon, this Court is not the

appropriate venue to address Plaintiffs' complaint as it lacks subject matter jurisdiction over a

stand-alone Section 7(a)(2) claim under both §§ 1581(i)(3) and 1581(i)(4).  Therefore, in the

interests of justice and as required by the Federal Circuit's instruction in *Salmon III*, the court

will transfer Plaintiffs' civil action to the U.S. District Court for the Western District of

Washington, where the action was originally filed on November 14, 2005.  Accordingly, it is

hereby

**ORDERED** that Plaintiffs' Motion to Transfer is **GRANTED**; and it is further

**ORDERED** that these proceedings be transferred to the U.S. District Court for the

Western District of Washington.


Date:   May 13, 2009                                             /s/ Judith M. Barzilay
          New York, New York                                Judith M. Barzilay, Judge

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                           Deputy Clerk